
**MIAMI UNIVERSITY**

9 Warfield Hall
Oxford, OH 45056-3629
513-529-1417

### Miami University – Office of Ethics and Student Conflict Resolution
### Administrative Hearing Panel Report Form

Student's Name: ▮▮▮▮▮▮▮▮▮                              Date: 10-7-14

Banner ID: ▮▮▮

Alleged Violation:         103 Sexual Misconduct

If alcohol violation:    ☐ 1st    ☐ 2nd    ☐ 3rd

**The panel:**

☒    has reviewed the student's disciplinary file in this matter

☒    has heard the evidence and reviewed the materials presented.

☒    has found that all University procedures were followed and timelines were met.

☒    has informed the student that the hearing was recorded.

☒    has informed the student of his/her right to appeal (*if applicable*)

Student entered a plea of:  ☐ Responsible

☒ Not Responsible   103 Sexual Misconduct

Student did not attend: ☐

☒    The following advisor was present throughout the hearing:  Dennis Deters

☒    The following witnesses testified:  ▮▮▮▮▮▮, victim

The panel has determined from the weight and credibility of the statements and evidence presented that

☒ has violated Section(s):        103 Sexual Misconduct

☐ has *not* violated Section(s):

**Rationale for finding and sanction (if appropriate):**

▮▮▮ and ▮▮▮ were friends and had previously spent time together.  Both agreed ▮▮▮ went willingly to ▮▮▮ residence hall room where they engaged in consensual kissing and to some extent, consensual sexual contact.  There was a point wehre ▮▮▮ indicated she did not want to engage in oral sex, said no, and stated the act continued.  It was determined that consent for sexual contact should have ended when ▮▮▮ said no and it did not end.

**The following sanction(s) shall be imposed:**

☒    Suspension                        From 10/7/14        To 5/15/15

☒    Disciplinary Probation        For one year upon re-enrollment at Miami

☒    Disciplinary Restrictions (specify): No contact with ▮▮▮▮▮

☐    Penalties for alcohol violation:    ☐ CAEP    ☐ Assessment        ☐ Alternatives    ☐ Paper

      Completion Date

Susan Vaughn, Chair, Administrative Hearing Panel                              8/2014

# Exhibit 17, page 1



, CT

October 13, 2014

Dr. Rose Marie Ward, Chair, University Appeals Board
9 Warfield Hall
Miami University
Oxford, OH 45056

Re: Appeal

Dear Dr. Rose Marie Ward

The purpose of this letter is to appeal the sanction imposed upon me at a hearing held on Tuesday, October 7, 2014, as set forth in a letter to me dated October 10, 2014 ("October 10 Letter"). The basis for my appeal is that an inappropriate sanction was imposed, a sanction not supported by a preponderance of the evidence as required by the University's own policy.

As set forth in the October 10 Letter, the panel imposed suspension and probation based upon a stated finding that the alleged victim was unable to consent to sexual contact with me. The facts in the file and as presented at the hearing do not support this finding. The alleged victim stated that:

- She came to my dorm room with the intent of engaging in sexual activity of some kind;
- She had one drink earlier in the evening and was sober at the time the alleged sexual contact occurred;
- At some point, she asked me to stop what I was doing and I did stop;
- She did not believe she had been sexually assaulted at the time the alleged contact occurred.

There was no evidence presented at the hearing which refuted these statements. By the alleged victim's own statements, she was able to consent. As a result, the sanction imposed was unsupported by the evidence and, as such, was an inappropriate sanction.

However, despite the fact that the evidence does not support the charges or the sanction imposed by the University, representatives of the University persisted in using the University's policy to inflict emotional harm and other harm on me:

- The record clearly shows that I was intoxicated, had no recollection of what occurred and was myself unable to consent to sexual contact pursuant to the University's own policy — nevertheless, the young woman in question was not charged with sexual assault;
- The panel blatantly led the alleged victim at the hearing in an attempt to corroborate the charges against me;
- I have repeatedly requested audio tapes in my file and from the hearing, which have not been made available to me, to date;

**Exhibit 18, page 1**

- This process has caused me great emotional distress and anxiety, as a result of which I requested a medical leave of absence on September 23, 2014 and I left campus to return home to Connecticut.

For all of the foregoing reasons, the October 10 Letter imposed an inappropriate sanction, not supported by the evidence and contrary to the University's own policy. I respectfully request that the sanction against me be reversed and that the charges against me be expunged from my record.

Sincerely,

**Exhibit 18, page 2**



**Eric Rosenberg <ericrosenb@gmail.com>**

## Fwd: Judicial Hold
1 message

██████████ <br>
<█████████@gmail.com>      Sat, Mar 28, 2015 at 11:42 PM <br>
To: Eric Rosenberg <ericrosenb@gmail.com>

---------- Forwarded message ---------- <br>
From: █████████████@miamioh.edu> <br>
Date: Sat, Mar 28, 2015 at 11:30 PM <br>
Subject: Fwd: Judicial Hold <br>
To: ███████████@gmail.com, ████████████ <br>
<████████@gmail.com>

---------- Forwarded message ---------- <br>
From: <OESCR@miamioh.edu> <br>
Date: Fri, Oct 31, 2014 at 11:00 PM <br>
Subject: Judicial Hold <br>
To: ████████@miamioh.edu, OESCR@miamioh.edu

A disciplinary hold has been placed on your ability to register. Holds are placed most frequently for failure to complete a University sanction. A disciplinary hold will not permit a student to register for a subsequent semester or change a current class schedule. Students are able to drop and withdraw from a course(s) per University policy as noted in the Student Handbook. A disciplinary hold also prevents a student from graduating as noted in the Code of Student Conduct.

You were required to complete a sanction because of a case of NON-ACADEMIC MISCONDUCT. Please contact the Office of Ethics and Student Conflict Resolution at 513-529-1417 if you have questions regarding this matter.

**Exhibit 19**

1/1

3/29/2015     Gmail - Fwd: appeal board hearing

 **Gmail**         Eric Rosenberg <ericrosenb@gmail.com>

## Fwd: appeal board hearing

1 message

<span>████████████</span> <span>████</span>@gmail.com>       Sat, Mar 28, 2015 at 11:42 PM
To: Eric Rosenberg <ericrosenb@gmail.com>

---------- Forwarded message ----------
From: <span>████████████████</span>@miamioh.edu>
Date: Sat, Mar 28, 2015 at 11:31 PM
Subject: Fwd: appeal board hearing
To: <span>████████</span> <<span>██████</span>@gmail.com>,
<span>██</span><span>████████</span>@gmail.com

---------- Forwarded message ----------
From: **OESCR, MU** <oescr@miamioh.edu>
Date: Tue, Nov 11, 2014 at 4:35 PM
Subject: appeal board hearing
To: <span>██████</span>@miamioh.edu
Cc: Timothy Parsons <parsontj@miamioh.edu>, Jayne Brownell
<browneje@miamioh.edu>, Mayra Garces <garcesml@miamioh.edu>

<span>████</span>

Please see the attached letter from the appeals board hearing regarding your
recent appeal.

Sincerely,
Ronita Rehmel

**Exhibit 20, page 1**

1/2



# MIAMI UNIVERSITY

Office of Ethics and Student Conflict Resolution
9 Warfield Hall
Phone: 513-529-1417
Fax: 513-529-1907

This e-mail and any files transmitted with it are confidential.
If you are not the intended recipient, you are hereby notified that any
disclosure, copying, distribution, or use of the contents of this
information is prohibited.  If you have received this e-mail
transmission in error, please notify me by telephone or via return
e-mail and delete this e-mail from your system.


261K

 **MIAMI UNIVERSITY**

Office of Ethics & Student Conflict Resolution
9 Warfield Hall
Oxford, OH 45056-3629
513-529-1417 (voice)
513-529-1907 (fax)

November 11, 2014

Mr. ████████████

Dear ████

The University Appeals Board met on November 10, 2014 to consider your appeal. They found:

1. *No new evidence was presented.*
2. *There was no procedural defect in the adjudication of the case.*
3. *The Board believes the sanctions imposed were appropriate. Therefore, the following sanctions were upheld:*

*In accordance with Section 2.2.B of the Code of Student Conduct, you are suspended from Miami University from October 7, 2014 to May 15, 2015. Please note that academic credit earned elsewhere during a period of disciplinary suspension will not be accepted in transfer. You are to have no presence on any of the Miami University campuses during the period of suspension.*

*In accordance with Section 2.2. D.5 of the Code of Student Conduct, you are to have no further contact with ████████ by telephone, e-mail, internet, or in person. You are to stay 150 feet away from her at all times. If you find that you are assigned to a class, lab or for any other instructional purpose with her, you are to contact the Office of Ethics and Student Conflict Resolution in advance and accommodations may be made.*

*In accordance with Section 2.2.C, you will be placed on disciplinary probation for one year upon your re-enrollment to Miami.*

You and ████ have the right to file a written appeal with the Vice President of Student Affairs within three university working days, by 5:00 p.m. on November 14, 2014, of the written notification of the disposition of the matter by the Office of Ethics and Student Conflict Resolution. The appeal should be addressed to the Vice President of Student Affairs, Dr. Jayne Brownell and should state the basis for the appeal and should include all supporting documents.

No sanction will be imposed until all appeals are completed (see Chapter 4 Appeals).

All parties will be notified if an appeal is filed and will have three University working days to submit a written response to the appeal. Copies of the statements of appeal and any responses will be made available to all involved parties

Please note that any restrictions imposed by the Dean of Students Office during a Summary Suspension Hearing (including but not limited to no contact restrictions, restrictions from campus or certain buildings on campus, or a summary suspension), remain in effect until the appeal process is complete.

Sincerely,



Dr. Rose Marie Ward, Chair
University Appeals Board

c:    OESCR Judicial File
      Tim Parsons, Dean of Students Office
      Dr. Jayne Brownell, Vice President of Student Affairs
      Mayra Garces, ████████
      Carey McVey, Registrar's Office
      Kristine Cassano, Records
      Brian Woodruff, Housing Office

mr

**Exhibit 20, page 3**



CT
November 14, 2014

Dr. Jayne Brownell, Vice President of Student Affairs
9 Warfield Hall
Miami University
Oxford, OH 45056

Re: Appeal

Dear Dr. Brownell:

The purpose of this letter is to appeal the decision of the University Appeals Board, as set forth in a letter to me dated November 11, 2014 ("November 11 Letter"), upholding the sanction imposed upon me at a hearing held on Tuesday, October 7, 2014, as set forth in a letter to me dated October 10, 2014 ("October 10 Letter"). The basis for my appeal is that an inappropriate sanction was imposed, a sanction not supported by the evidence and certainly not by "a preponderance of the evidence" as required by the University's own policy.

As set forth in the October 10 Letter, the panel imposed suspension and probation based upon a stated finding that the alleged victim was unable to consent to sexual contact with me. The facts in the file and as presented at the hearing do not support this finding. The alleged victim stated that:

- She came to my dorm room with the intent of engaging in sexual activity of some kind;
- She had one drink earlier in the evening and was sober at the time the alleged sexual contact occurred;
- At some point, she asked me to stop what I was doing and I did stop;
- She did not believe she had been sexually assaulted at the time the alleged contact occurred.

There was no evidence presented at the hearing which refuted these statements. By the alleged victim's own statements, she was able to and did, in fact, consent. As a result, the sanction imposed was wholly unsupported by the evidence and, as such, was an inappropriate sanction.

Despite the fact that the evidence does not support the charges or the sanction imposed by the University, representatives of the University persisted in using the University's policy to inflict emotional harm and other harm on me:

- The record clearly shows that I was intoxicated, had no recollection of what occurred and was myself unable to consent to sexual contact pursuant to the University's own policy – nevertheless, the young woman in question was not charged with sexual assault;
- The panel blatantly led the alleged victim at the hearing in an attempt to corroborate the charges against me;

Exhibit 21, page 1

- I have repeatedly requested audio tapes in my file and from the hearing, which have not been made available to me, to date;
- This process has caused me great emotional distress and anxiety, as a result of which I requested a medical leave of absence on September 23, 2014 and I left campus to return home to Connecticut.

Notwithstanding the fact that I am a good student, hard worker, loyal friend and person of integrity – or perhaps because of it, this entire incident has been devastating to me, my relationships with friends and family, and my long held plans for an undergraduate education at Miami University (my father's alma mater). I am not guilty of the charges levied on me by the University and do not accept the findings or the sanction imposed.

No doubt you are aware of the growing body of evidence that suggests that the Title IX protocol, as carried out by Miami and other universities, is overreaching and unconstitutional. An opinion piece in the October 15, 2014 edition of the Boston Globe, titled "Rethink Harvard's Sexual Harassment Policy" noted that the procedures adopted by Harvard for "deciding cases of sexual misconduct lack the most basic elements of fairness and due process, are overwhelmingly stacked against the accused, and are in no way required by Title IX law or regulation." Also notably, Brett Sokolow, Executive Director of the Association of Title IX Administrators ("ATIXA"), in the ATIXA Tip of the Week Newsletter dated April 24, 2014, expressed grave concern about overzealous prosecution of Title IX violations on college campuses. In my case, in what can only be considered an effort to preserve substantial Title IX funding from the Department of Education, the University has gone far beyond the original intent of Title IX and has ignored the evidence in order to bolster its Title IX record and its coffers– to my great detriment.

I participated in the University's disciplinary and appeals process expecting to be afforded the rights outlined in the student handbook. However, I found that, as the accused, I was afforded no rights and no due process – indeed, there was a presumption of guilt even where the facts did not support the charges imposed. Accordingly, I expressly reserve all legal rights and remedies that may be available to me now or in the future.

For all of the foregoing reasons, the October 10 Letter imposed an inappropriate sanction, not supported by the evidence and contrary to the University's own policy. The November 11 Letter regrettably failed to rectify this policy breach. I respectfully request that the sanction against me be reversed and that the charges against me be expunged from my record.

Sincerely,

cc. Dennis Osters, Esq.

**Exhibit 21, page 2**



**ATIXA Tip of the Week**
**Newsletter**
**April 24th, 2014**

## SEX AND BOOZE

Tip of the Week authored by Brett A. Sokolow, J.D., ATIXA Executive Director

Okay, so I'm all fired up again.  In the last two weeks, I've worked on five cases all involving drunken hook-ups on college campuses.  In each case, the male accused of sexual misconduct was found responsible.  In each case, I thought the college got it completely wrong.  My friends, these are challenging cases, no doubt.  But, we have to get them right.  We've written about this at length and talked about it forever, but some boards and panels still can't tell the difference between drunk sex and a policy violation.  Perhaps the problem stems from weak policy, insufficient training or the futility of the panel model.  Regardless, we need to fix it.

So, let me come at this from another angle.  Finding each of the accused in violation of sexual misconduct is sex discrimination.  We are making Title IX plaintiffs out of them.  The customs and practices of the field of higher education have adopted, as a common policy formulation, that sexual actions with a person the respondent knows to be incapacitated, or should know to be incapacitated by alcohol, drugs, sleep, etc., is prohibited.  This is the non-discriminatory way to frame policy.  But, in a recent case, the campus policy stated that intoxication creates an inability to consent.  Thus, in any situation in which a male student and a female student have sex, and both are intoxicated, this college will commit an act of gender discrimination by only charging one of them.  If both are intoxicated, they both did the same thing to each other.  Why should only the male be charged if both students behave in ways defined as prohibited by the policy? I'm not suggesting we charge both.  Surely, every drunken sexual hook-up is not a punishable offense, especially if the parties know what they did and liked it.

A common policy problem comes from failing to distinguish between intoxicated and incapacitated. Yet, the most serious issue comes from failing to implement a *mens rea*, if you will, within the definition.  Certainly, criminal concepts like *mens rea* are not strictly applicable to the campus conduct process, but if we agree as I stated above that having sex with a willing, yet intoxicated person is not an offense, there must be something that the respondent does, beyond having sex, that makes a lawful act (sex) into a policy violation.

In the common formulation I offered above, the key is that the respondent's culpability rests on two factors, the incapacitation of the victim and his knowledge of that incapacitation, whether actual or constructive.  Thus, the respondent does something more than to have sex, which is lawful.  The respondent takes advantage of the victim's incapacity, and the taking advantage is the harmful element.  The taking advantage comes because the respondent knows the victim is weak, unable to make reasonable decisions and cannot have knowledge of the act.  This cannot be proved by the victim's assertion of her own incapacity, blackout or lack of memory.  This is shown by the totality of evidence composed of some or all of the following factors that the respondent knew or should have known:

1. The respondent knew that the complainant was drinking or using drugs and may know how much/what kind;
2. The victim was stumbling or otherwise exhibited loss of equilibrium;
3. Slurred speech or word confusion;
4. Bloodshot, glassy or unfocused eyes:
5. Any of the signs of alcohol poisoning;
6. Vomiting, especially repeatedly;
7. Being disoriented, or confused as to time, place, etc.; and/or
8. Loss of consciousness

A good policy cannot make it a violation simply for male students to have sex with an intoxicated person, if they are completely ignorant of that fact.  Thus, they are just having sex.  They do nothing that additionally transgresses, is wrongful or is intentional any more than they do every time they have sex.  There is no need for an intent to rape, but there has to be something more than an intent to have sex to make this an offense.  Otherwise, men are simply being punished for having sex, which is gender discrimination under Title IX, because their partners are having sex too and are not being subject to the code of conduct for doing so.  Without a knowledge standard, a respondent will suffer an arbitrary and capricious application of the college's rules.

*This publication is a member-only publication and may not be disseminated to non-members or posted publicly without authorization from ATIXA.*
©ATIXA 2O14. All rights reserved.

**Exhibit 22, Page 2**



Eric Rosenberg <ericrosenb@gmail.com>

## Fwd: VP decision letter - December 10, 2014

1 message

▮▮▮▮▮▮▮▮▮
<▮▮▮▮▮▮▮▮▮                                     Sat, Mar 28, 2015 at 11:42
                                                PM
To: Eric Rosenberg <ericrosenb@gmail.com>

---------- Forwarded message ----------
From: ▮▮▮▮▮▮▮▮ <▮▮▮▮@miamioh.edu>
Date: Sat, Mar 28, 2015 at 11:33 PM
Subject: Fwd: VP decision letter - December 10, 2014
To: ▮▮▮▮▮▮▮▮@gmail.com, ▮▮▮▮▮▮▮▮
<▮▮▮▮▮@gmail.com>


---------- Forwarded message ----------
From: OESCR, MU <oescr@miamioh.edu>
Date: Wed, Dec 10, 2014 at 4:50 PM
Subject: VP decision letter - December 10, 2014
To: ▮▮▮▮@miamioh.edu
Cc: Rose Marie Ward <wardrm1@miamioh.edu>, Carey McVey
<mcveyce@miamioh.edu>, Miami University Registrar <registrar@miamioh.edu>,
Kristine Cassano <cassankl@miamioh.edu>, Timothy Parsons
<parsontj@miamioh.edu>


▮▮▮

Attached is the decision letter from the VP on your appeal

Sincerely,
Ronita Rehmel



**MIAMI UNIVERSITY**

Office of Ethics and Student Conflict Resolution
9 Warfield Hall
Phone: 513-529-1417
Fax: 513-529-1907

This e-mail and any files transmitted with it are confidential.
If you are not the intended recipient, you are hereby notified that any
disclosure, copying, distribution, or use of the contents of this
information is prohibited. If you have received this e-mail
transmission in error, please notify me by telephone or via return
e-mail and delete this e-mail from your system.



pdf
417K



**MIAMI UNIVERSITY**
OXFORD, OH · EST. 1809

STUDENT AFFAIRS
*Office of the Vice President*

110 Warfield Hall
451 E. Spring Street
Oxford, OH 45056-2819
(513) 529-5526 main
(513) 529-3445 fax
MiamiOH.edu

December 9, 2014


Mr.
CT

Dear Mr.

I have considered your appeal of the decision of the University Appeals Board to uphold the sanction from your Administrative Hearing held on October 7, 2014. I concur with the conclusions of the University Appeals Board that there was no new evidence presented, no defects in the procedure and the sanction imposed is appropriate.

While I have upheld the University Appeals Board decision, I have decided to revise your suspension period to October 7, 2014 through January 23, 2015.

Your sanctions, stands as follows:

> In accordance with Section 2.2.B of the Code of Student Conduct, you are suspended from Miami University from October 7, 2014 to January 23, 2015. Please note that academic credit earned elsewhere during a period of disciplinary suspension will not be accepted in transfer. During the time of the suspension, you are to have no presence on campus.

> As outlined in Section 2.2.C of the Code of Student Conduct, you will be on disciplinary probation for one year upon your re-enrollment to Miami University.

> In accordance with Section 2.2.D.5 of the Code of Student Conduct, you are to have no further contact with ▮▮▮▮▮▮ by telephone, e-mail, internet, or in person. You are to stay 150 feet away from her at all times. If you find that you are assigned to a class, lab or for any other instructional purpose with her, you are to contact the Office of Ethics and Student Conflict Resolution in advance and accommodations may be made.

As per Section 2.1.0 Retaliation (115) of the Code of Student Conduct, Retaliation is strictly prohibited. Any retaliatory action or conduct by any person against a person who has filed a complaint, served as a witness, assisted, or participated in any investigation or in any other manner under this Code of Student Conduct, the University's Policy on Reporting and Addressing Illegal Activity and Misconduct, or the University's Policy Prohibiting Harassment or Discrimination is strictly prohibited and will be regarded as a separate and distinct violation of the Code of Student Conduct. This protection against retaliation extends to any person who opposes acts of sexual harassment or discrimination, sexual violence, sexual misconduct, domestic violence, dating violence, or stalking, or who testifies, assists, or participates in any manner in an investigation, proceeding, or hearing relative to harassment or discrimination

**Exhibit 23, page 3**

I hope that you use this time away from campus to closely examine your behavior and to learn to apply the ability to make appropriate decisions no matter what the setting or circumstance. Miami expects both academic achievement and responsible behavior. You must decide if you are willing to meet Miami's expectations. I hope when you return you will make the most of the opportunities Miami has to offer.

If you have questions about these sanctions, please contact the Office of Ethics and Student Conflict Resolution.

Sincerely,

Jayne Brownell, Ed.D
Vice President for Student Affairs

C:      Susan Vaughn, Director, Office of Ethics and Student Conflict Resolution
        Dr. Rose Marie Ward, University Appeals Board
        Carey McVey, Registrar's Office
        Kris Cassano, Bursar's Office
        Tim Parsons, Dean of Students Office
        OESCR Student Conflict File

**Exhibit 23, page 4**



▬▬▬▬, CT▬▬
January 19, 2015

Dr. Jayne Brownell, Vice President of Student Affairs
Miami University
110 Warfield Hall
451 E. Spring Street
Oxford, OH  45056-2819

Re:  Response to Decision on Appeal

Dear Dr. Brownell:

I am in receipt of your letter dated December 9, 2014 notifying me of your decision to uphold the sanction from my administrative hearing on October 7, 2014; while at the same time, shortening the suspension period.

Your stated justification for upholding the decision of the University Appeals Board is "that there was no new evidence presented, no defects in the procedure and the sanction imposed is appropriate." However, this conclusion fails to take into account evidence already part of the record in this matter (as noted in my appeal to you dated November 14, 2014) which indicates that the sanction imposed was not supported by "a preponderance of the evidence" as required by the University's own policy.

Furthermore, your letter fails to respond to the fact that, pursuant to the University's own policy I was unable to consent to sexual contact, and yet the young woman in question was not charged with sexual assault.  It would seem, then, that the University's policies are not invoked for the protection of all students, after all.

Notwithstanding your decision to uphold the sanction, you inexplicably revised the suspension period from the original period of October 7, 2014 through May 15, 2015, to a revised period of October 7, 2014 through January 23, 2015.  This is an empty gesture, at best, for several reasons.  With spring semester classes beginning on January 26, 2015, it would be virtually impossible for me to register for the classes I need and obtain the on campus housing that I would be required to inhabit as a sophomore after the suspension is lifted.  More importantly, however, the trauma and emotional strain of this process has made it impossible for me to return to Miami, a school that I once loved and revered, at this time.

I feel betrayed by Miami University – the University I chose, the University that has long built its public persona on "Love and Honor."  The manner in which this disciplinary process was conducted and its outcome is particularly devastating when the University is willing to very publicly accept large donations from high profile alumni who have a known history of sexual assault.

**Exhibit 24, page 1**

I have never sexually assaulted another person by the University's standard or any other standard. A thorough review of the evidence in this matter would show just that. Had the University followed its own process and afforded me the rights that an accused student should be afforded, it would have discovered that, not only am I not guilty of the charges against me, but I am exactly the kind of student that Miami should be proud to call one of its own.

For all these reasons, I do not accept the findings or the sanction imposed.

Regards,

████████████

**Exhibit 24, page 2**

Case: 1:15-cv-00605-MRB Doc #: 39-4 Filed: 01/20/16 Page: 18 of 23 PAGEID #: 2253

  

**ARCHIVES**
**SUBSCRIBE**

---

# A Note to Our Readers

Like   Share   61k    Tweet   13K     💬 **Comment**    ✉ **Email**



## RELATED



The Campus Rape Epidemic



A Rape on Campus: A Brutal Assault and Struggle for Justice

**BY ROLLING STONE** | December 5, 2014

Last month, *Rolling Stone* published a story entitled A Rape on Campus which described a brutal gang rape of a woman named Jackie during a party at a University of Virginia fraternity house, the University's failure to respond to this alleged assault – and the school's troubling history of indifference to many other instances of alleged sexual assaults. The story generated worldwide headlines and

## AROUND THE WEB



**The Story Behind 'Gone Girl's Most Talked-About Scene**



**8 Things That Bother Us About Taylor Swift's 1989**

**Exhibit 25, page 1**

A Note to Our Readers | Rolling Stone

much soul-searching at UVA.
University president Teresa Sullivan
promised a full investigation and also to
examine the way the school investigates
sexual assault allegations.

Because of the sensitive nature of
Jackie's story, we decided to honor her
request not to contact the man who she
claimed orchestrated the attack on her
nor any of the men who she claimed
participated in the attack for fear of
retaliation against her. In the months
Erdely reported the story, Jackie said or
did nothing that made her, or *Rolling
Stone*'s editors and fact-checkers,
question her credibility. Jackie's friends
and rape activists on campus strongly
supported her account. She had spoken
of the assault in campus forums. We
reached out to both the local branch
and the national leadership of Phi Psi,
the fraternity where Jackie said she was
attacked. They responded
that they couldn't confirm or deny her
story but that they had questions about
the evidence.

In the face of new information reported
by the Washington Post and other news





**5 Famous Movies with Gaping Plot Holes**

**The Most Honest Review of 'Birdman' Yet**

POWERED BY ZERGNET

## FEATURED NEWS FROM


THE DAILY BEAST

**Mark Wahlberg's Racist Rap Sheet** 

**The Week in Viral Videos** 

**Chris Brown vs. Drake: The Sequel** 

**Gail Simone's Bisexual Catman** 

**Comic Books' True Origin Story** 

**Exhibit 25, page 2**

outlets, there now appear to be discrepancies in Jackie's account. The fraternity has issued a formal statement denying the assault and asserting that there was no <u>"date function or formal event"</u> on the night in question. Jackie herself is now unsure if the man she says lured her into the room where the rape occurred, identified in the story, as "Drew," was a Phi Psi brother. According to the *Washington Post*, "Drew" actually belongs to a different fraternity and when contacted by the paper, he denied knowing Jackie. Jackie told *Rolling Stone* that after she was assaulted, she ran into "Drew" at a UVA pool where they both worked as lifeguards. In its statement, the Phi Psi says none of its members worked at the pool in the fall of 2012. A friend of Jackie's (who we were told would not speak to *Rolling Stone*) told the *Washington Post* that he found Jackie that night a mile from the school's fraternities. She did not appear to be <u>"physically injured at the time" but was shaken.</u>  She told him that that she had been forced to have oral sex with a group of men at a fraternity party, but he does not

# MOST SHARED











**SEE ALL »**

**Exhibit 25, page 3**

remember her identifying a specific house. Other friends of Jackie's told the *Washington Post* that they now have doubts about her narrative, but Jackie told the *Washington Post* that she firmly stands by the account she gave to Erdely.

We published the article with the firm belief that it was accurate. Given all of these reports, however, we have come to the conclusion that we were mistaken

## RollingStone    MUSIC   POLITICS   TV   MOVIES   CULTURE

### REVIEWS   LISTS    COUNTRY

contact the alleged assaulters to their account. In trying to be sen to the unfair shame and humiliation many women feel after a sexual assault, we made a judgment – the kind of judgment reporters and editors make every day. We should have not made this agreement with Jackie and we should have worked harder to convince her that the truth would have been better served by getting the other side of the story. These mistakes are on *Rolling Stone*, not on Jackie. We apologize to anyone who was affected by the story and we will continue to investigate the events of that evening.







**NEXT**
The Big 12's 'One True Champion' Just Might Save Us All...Even if There Are Two of Them

**Exhibit 25, page 4**



Will Dana

Managing Editor

Like　Share　61k　　Tweet　13K

✉ Email

# BEST OF ROLLING STONE



Chris Rock's 10 Best Stand-Up Routines



Sinister Photos From Hard's EDM Day of the Day Fest 2014



The 30 Best '30 for 30' Films



The Big U-Knot: See Randy Johnson's Knotfest Photos

# AROUND THE WEB



**CRAC**
22 Shoc Dark Lyrics in Otherwise Happy Songs



**ESQU**
22 Hilar Photo That Perfectly Combine Movie Scenes With Real Life



**MIC**
7 New Concert Tours With Better Openers Than Headliners





**ASK**
The Grea Stor Movies



**CRAC**
5 Cla Song That Were

**SALON**
The 8 Most Ridiculous Deaths of

**Exhibit 25, page 5**

Of All
Time

Originally
Creepy
as Hell

TV
Characters

# ADD A COMMENT

Comments for this thread are now closed.                    ✕



**Comments**

Share  ↗    Favorite  ★

Be the first to comment.



FOLLOW
RS ON

ROLLING STONE
NEWSLETTER

Sign up for the latest news, lists
& videos!

ENTER EMAIL ADDRESS

LATEST
ISSUE

Digital
Edition

Subscribe

© 2014 Rolling Stone    Contact    Privacy Policy    Your Privacy Rights    Your Ad Choices    Data Policy

Terms of Use    Customer Service    Advertise    Sitemap

IN ASSOCIATION WITH

**Exhibit 25, page 6**