# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

John Doe,

        Plaintiff,                                 Case No.  1:15cv605

        v.                                      Judge Michael R. Barrett

Miami University, *et al.*,

        Defendants.

## OPINION & ORDER

This matter is before the Court upon Defendants' Motion to Dismiss.  (Doc. 42)  Plaintiff filed a Response (Doc. 43) and Defendants filed a Reply (Doc. 44).

Also before the Court is Plaintiff's Motion Instanter to Supplement Docket 43 with Supplemental Authorities issued after the Filing of Docket 43.  (Doc. 50).  Defendants opposed Plaintiff's Motion, but also filed a full response to the applicability of the authorities cited by Plaintiff.  (Doc. 51).  Plaintiff filed a Reply.  (Doc. 52).  While the Court will determine the applicability of the cited caselaw within the context of deciding Defendants' Motion to Dismiss, the Court will permit Plaintiff to supplement its Response.  Therefore, Plaintiff's Motion is GRANTED.

Thereafter, Plaintiff John Doe filed two Notices of additional authority (Docs. 53, 56); Defendants filed a Response to the first Notice (Doc. 54); and Plaintiff filed a Reply (Doc. 55).

## I.     BACKGROUND

This case centers on Defendant Miami University's ("Miami") discipline imposed on Plaintiff John Doe in response to allegations that Plaintiff, a Miami student, sexually

assaulted Jane Doe, another Miami student, on September 14, 2014.

According to the Amended Complaint, Plaintiff was incapacitated by alcohol and therefore has no independent recollection of the events of that night. (Doc. 39, PAGEID #1978, ¶24). However, Jane Doe's written statement is attached to the Amended Complaint and is incorporated into the allegations in the Amended Complaint. After exchanging texts, Jane Doe met up with Plaintiff and his roommate in their room. (Doc. 39, PAGEID #1974, ¶3(d)). Jane Doe stated that she "kinda sobered up" when she arrived and "decided to stay there." (Id.) Jane Doe joined Plaintiff in his bed. (Doc. 39, PAGEID #1974, ¶3(e)). Plaintiff started kissing her, which was "okay and what I expected and fine." (Doc. 39, PAGEID #1975, ¶3(g)). Plaintiff then asked Jane Doe if he could "finger" her, and she responded, "fine." (Id.) At some point Plaintiff began to perform oral sex on Jane Doe. (Doc. 39, PAGEID #1975, ¶3(h)). Jane Doe explains that "I never said no. I pushed him away. He rolled over and went to sleep." (Id.)

Later, Jane Doe told a friend that she was uncomfortable with her interaction with Plaintiff. (Doc. 39, PAGEID #1979, ¶28). Eventually, by word of mouth, a Resident Advisor ("RA") was told that Jane Doe was sexually assaulted by Plaintiff. (Id.) This RA reported the incident to her superiors. (Doc. 39, PAGEID #1978, ¶29).

On September 16, 2014, the University began disciplinary proceedings. (Doc. 39, PAGEID #1979, ¶30). The first step in the proceedings was a "summary suspension hearing." (Id.) Miami Associate Vice President of Dean of Students Michael Curme notified Plaintiff on September 16, 2014 that the summary suspension hearing was scheduled for the next day and stemmed from a "report alleging that you sexually assaulted a female student on Sunday September 14, 2014." (Id.) The summary

suspension hearing was held on September 17, 2014.  It was conducted by Curme and was recorded.  (Doc. 39, PAGEID #1979, ¶31).   On September 23, 2014, Plaintiff received a "Notice of Alleged Violation" from the Office of Ethics and Student Conflict Resolution's ("OESCR") Director Susan Vaughn alleging he violated the "sexual assault" prohibitions in Miami's Student Conduct Regulation §103. (Doc. 39, PAGEID #1981, ¶39).  The Notice also informed Plaintiff that he would be subject to sanctions if he did not appear at a "Procedural Review" which was scheduled less than twenty-four hours later.  (Id.)

On September 24, 2014, the Procedural Review took place.  (Doc. 39, PAGEID #1982, ¶42).  There, Plaintiff denied responsibility for sexually assaulting Jane Doe and requested that the charges be adjudicated by an Administrative Hearing Panel. (Id.)

On October 1, 2014, Miami sent Plaintiff a "Notice of Hearing."  (Doc. 39, PAGEID #1982, ¶50).  The Notice informed Plaintiff that he had forty-three hours to produce: "1. A list of witnesses you intend to present to provide information to the Hearing Panel; 2. Any supporting documents you want the Hearing Panel to consider including, but not limited to, audio recordings, social media messages/postings (Facebook, Twitter, Instagram) police reports, photographs, videos, etc.; 3. Any written statements you want the Hearing Panel to consider including, but not limited to, statement of the complainant or the accused or witness statements."  (Id.)  The Notice of Hearing sent to Jane Doe included the same October 3, 2014 deadline, but Jane Doe was permitted to submit her written statement on October 6, 2014.  (Doc. 39, PAGEID #1982, ¶51).

The Administrative Hearing took place on October 7, 2016. The hearing panel

consisted of Miami's Associate Professor Alana Van Grudy-Yoder, Miami's Professor Steven Elliot and OESCR's Director Vaughn. (Doc. 39, PAGEID #1982, ¶52). Plaintiff alleges that Grudy-Yoder holds gender-biased views against male students based on her academic research, which focuses on feminist criminological theory and the implementation of gender-specific policy and procedures within the American system of corrections. (Doc. 39, PAGEID #1982, ¶54). Plaintiff alleges that Vaughn served as investigator, prosecutor, and judge of the charges against Plaintiff. (Doc. 39, PAGEID #1982, ¶58). Plaintiff states that Vaughn dominated the Administrative Hearing with questions and comments designed to deflate Plaintiff's credibility while inflating Jane Doe's credibility. (Doc. 39, PAGEID #1982, ¶58). Plaintiff alleges that Vaughn's conduct during the Administrative Hearing exhibited gender bias against males. (Doc. 39, PAGEID #1982, ¶60). Specifically, Plaintiff alleges that Vaughn asked questions and made comments downplaying facts proving Jane Doe initiated physical contact with Plaintiff when she knew or should have known he was incapacitated by alcohol; and coaxed Jane Doe to provide testimony that reinforced gender biased stereotypes of male students such as Plaintiff wanting to initiate unwanted physical contact with females. (Id.)

On October 7, 2014, Vaughn notified Plaintiff that the hearing panel found him responsible for violating Miami's Student Conduct Regulation §103; and he was suspended "from Miami for the fall, winter term and spring term . . . [and that he] was eligible to apply for re-enrollment to Miami for classes beginning in the Summer of 2015." (Doc. 39, PAGEID #1987, ¶61). Vaughn informed Plaintiff that if he returned to Miami after his suspension he would be placed on "disciplinary probation for one year . .

4

. ." (Id.)  On October 10, 2014, Vaughn sent a letter which, among other things, explained:

> Based on the evidence and statements presented, the panel found you responsible.  You stated both you and [Jane Doe] were friends and have spent time together in the past.  Both of you agreed to go to your residence room, where you engaged in consensual kissing and some consensual sexual contact.  However, at some point, [Jane Doe] indicated she did not want you to have oral sex and asked you to stop but the act continued as a result, the following sanctions have been imposed.

(Doc. 39, PAGEID #1987, ¶62).

Plaintiff appealed the sanctions to Miami's Appeal Board, but on November 11, 2014 his appeal was rejected by Miami's Appeals Board Chair Rose Marie Ward.  (Doc. 39, PAGEID #1989, ¶¶69, 73).  Plaintiff claims Ward's rejection was based on gender bias in part because Ward's academic research focuses on college student alcohol consumption and sexual assault from the perspective of protecting females from males.  (Doc. 39, PAGEID #1991, ¶74.)

Plaintiff appealed the Appeals Board decision to Dr. Jayne Brownell, Miami's Vice President of Student Affairs.  (Doc. 39, PAGEID #1989, ¶75).  VP Brownell reduced John Doe's sanctions, but did not address his factual challenges to the Board's decision.  (Doc. 39, PAGEID #1993, ¶77.)

Plaintiff alleges that during this process, Miami gave Jane Doe "limited amnesty" for her underage drinking in return for her cooperation in Miami's prosecution of Plaintiff. (Doc. 39, PAGEID #1983, ¶49).  This "limited amnesty" is part of a policy found in Section 2.1.C.2 of Miami University's Student Handbook:

> While the University does not condone underage drinking or violation of other University policies, it considers reporting sexual misconduct to be of paramount importance.  To encourage reporting and adjudication of sexual misconduct, Miami University will extend limited amnesty to a

> student who has been the alleged victim of sexual misconduct. The University will generally not seek to hold the student responsible for his/her own violations of the law (e.g., underage drinking) or the Code of Student Conduct in which he or she may have been involved during the period immediately surrounding the sexual misconduct.

(Doc. 39-2, PAGEID #2095).

Plaintiff also alleges that based on a signed statement made by Jane Doe and a text message Jane Doe sent to Plaintiff, Jane Doe initially did not want Miami to subject Plaintiff to disciplinary procedures.  (Doc. 39, PAGEID #1983, ¶¶ 47-48).  Plaintiff claims that Plaintiff eventually succumbed to pressure by yet to be identified Miami employees who convinced Jane Doe to participate in the disciplinary procedures.   (Doc. 39, PAGEID #1983, ¶47).

In his Amended Complaint, Plaintiff brings claims against Jane Doe, Miami, Miami's Vice President of Student Affairs, Dr. Jayne Brownell; Miami's Director of OESCR, Susan Vaughn; Miami's Associate Professor Alana Van Grudy-Yoder; Miami's Professor Steven Elliot; and Miami's Appeals Board Chair Rose Marie Ward ("Individual Defendants").

After voluntarily dismissing his claims against Jane Doe, Plaintiff's remaining claims are: (Count 3) violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 against Miami for failure to prevent a hostile environment sexual harassment and/or discrimination; (Count 4) violation of Title IX against Miami for acting with deliberate indifference because of his male gender; (Count 5) violation of Title IX against Miami based on Miami's erroneous determination that Plaintiff violated Miami policies which Miami adopted pursuant to federal laws and regulations related to Title IX; (Count 6) violation of procedural and substantive due process under 42 U.S.C.

§1983 against Brownell, Vaughn, Grudy-Yoder, Elliot and Ward ("Individual Defendants") in both their official capacity for injunctive relief and their personal capacity for money damages; (Count 7) violation of equal protection under 42 U.S.C. §1983 against the Individual Defendants in both their official capacity for injunctive relief and their personal capacity for money damages.

Plaintiff also brings a claim for injunctive relief (Count 8), but admits that injunctive relief is a remedy, not a separate cause of action. (Doc. 43, PAGEID 3225). Therefore, insofar as Count Eight brings a separate claim for injunctive relief, that claim is dismissed.

Miami and the Individual Defendants move to dismiss the claims alleged against them pursuant to Federal Rule of Civil Procedure 12. With the exception of Count Eight, Plaintiff opposes Defendants' Motion. In the alternative, Plaintiff seeks: (1) leave to file an amended complaint to provide additional evidence of Defendants' gender-biased unlawful discipline; or (2) an order converting Defendants' Motion to Dismiss into a motion for summary judgment and allowing John Doe to engage in additional discovery.[1]

---

[1]Plaintiff does not specify what additional allegations he would make in an amended complaint or what discovery would be necessary. "Bare allegations or vague assertions of the need for discovery are not enough." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (citing *United States v. Cantrell*, 92 F.Supp.2d 704, 717 (S.D.Ohio 2000)). Moreover, under Federal Rule of Civil Procedure 56(d), to warrant additional discovery, a nonmovant must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The nonmovant must state with "some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment." *Id.* (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed.Cir. 1996)). Here, Plaintiff has not provided such an affidavit or specified reasons he cannot present facts in opposition to Defendants' motion.

## II.  ANALYSIS

### A. Motion to Dismiss Standard

When reviewing a 12(b)(6) motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### B. Eleventh Amendment

The Individual Defendants argue that Plaintiff's claims against them in their official capacities seeking an order declaring that they violated federal law in the past are barred by the Eleventh Amendment.

Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens." *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993)). As a public university in the State of Ohio, Miami qualifies as an arm of the state and is

immune from suit under the Eleventh Amendment.  *Id.*  Plaintiff's claims against the Individual Defendants in their official capacities for money damages are also barred by the Eleventh Amendment.  *See id.* (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.")). However, the Eleventh Amendment does not preclude a suit against the Individual Defendants for prospective injunctive relief.  *See id.* at 662 (citing *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000)).

The Sixth Circuit has recently held that a request that individual defendants sued in their official capacity be enjoined from reporting any disciplinary actions taken by the university would not require the court to grant any retroactive or compensatory remedy. *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016).  "Rather, the individual defendants would merely be compelled to remove the negative notation from [the plaintiffs'] disciplinary records that resulted from the allegedly unconstitutional disciplinary process."  *Id.*  The Sixth Circuit also held that the plaintiffs' request for a declaratory judgment that the individual defendants violated their constitutional rights in the past was not barred by the Eleventh Amendment because it is ancillary to a prospective injunction designed to remedy a continuing violation of federal law.  *Id.*

Therefore, to the extent that Plaintiff's requested relief matches the requested relief in *Doe v. Cummins*, Plaintiff's claims against the Individual Defendants are not barred by the Eleventh Amendment.

### C. Title IX

Title IX of the Education Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

In an unpublished 2003 decision, the Sixth Circuit recognized: "Neither the Supreme Court nor the Sixth Circuit has set forth a standard for determining when intentional discrimination has occurred in a case where a student has relied on Title IX to challenge either the initiation or the outcome of a disciplinary proceeding." *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638 (6th Cir. 2003). This is still the status of the law today. For guidance, the *Mallory* court looked to the Second Circuit's decision in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994); *see also Doe v. Cummins*, 662 F. App'x 437, 451 (6th Cir. 2016) ("Although we are not subject to a binding framework in evaluating a student's Title IX discrimination claim, we have previously looked to the Second Circuit's decision in *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).").

In *Yusuf*, the Second Circuit identified two intent standards. 35 F.3d at 715. Under the first standard, called "erroneous outcome," a plaintiff was "innocent and wrongly found to have committed an offense." *Id.* Under the second standard, the plaintiff alleges selective enforcement which "asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id.* The Sixth Circuit noted that both of these theories "require a plaintiff to demonstrate that the conduct of the university in question was motivated by a sexual bias." 76 F. App'x at 638; *see also Sahm v. Miami*

10

*Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015) (citing 20 U.S.C. § 1681(a) which prohibits discrimination "on the basis of sex" and explaining that under either the erroneous outcome or selective enforcement theory, a plaintiff must prove gender bias against the defendant).

The plaintiff in *Mallory* proposed two additional standards: deliberate indifference and archaic assumptions.  The court in *Mallory* explained that the deliberate indifference standard should be applied when "a plaintiff seeks to hold an institution liable for sexual harassment and requires the plaintiff to demonstrate that an official of the institution who had actual authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct."  76 F. App'x. at 638.  The court explained the final standard, archaic assumptions, concerns "discriminatory intent in actions resulting from classifications based upon archaic assumptions." *Id.* at 638-39.  While the Sixth Circuit explained this analytic framework, the court did not analyze the plaintiff's claims under these two standards.  *Id.* at 639.  *Accord Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (declining to adopt "deliberate indifference" or "archaic assumptions" categories because neither was applicable based on the plaintiffs' allegations).

This Court has yet to conclude whether to recognize a Title IX claim based on the deliberate indifference standard when the allegations do not include sexual harassment. *See Sahm*, 110 F. Supp. 3d at 778, n.1; *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 7254213, at *8 (S.D. Ohio Nov. 17, 2015) ("This Court declines to broaden the current framework used to analyze allegations about discrimination in a university disciplinary proceeding in the absence of controlling Sixth Circuit precedent.").[2]

---

[2]In an earlier decision, this Court denied a motion to dismiss a Title IX claim of deliberate indifference based upon the allegation that the actions of the president of the university were

Plaintiff claims violations of Title IX under the deliberate indifference and erroneous outcome theories. Plaintiff's Title IX claim under the deliberate indifference theory is based on sexual harassment and arguably fits within the parameters of the deliberate indifference theory as it was described by the Sixth Circuit in *Mallory*.[3] The Court will assume, *arguendo*, that this category applies and will address Plaintiff's Title IX claim under both the deliberate indifference and the erroneous outcome standards.

### 1. Deliberate indifference

As one district court has explained, in applying the deliberate indifference standard:

> The "deliberate indifference" must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it. *Patterson v. Hudson Area Schs.*, 551 F.3d 438, 446 (6th Cir. 2009). "[A] Plaintiff may demonstrate a defendant's deliberate indifference to discrimination 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* (internal citations omitted).

*Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 757 (E.D. Tenn. 2009). Plaintiff

---

deliberately indifferent:

> Here, a liberal reading of the Complaint shows Plaintiff alleges Defendant Graham knew of the allegations against Plaintiff, and that Defendant Graham ignored warnings from the Prosecutor that such allegations were unfounded. It further alleges Defendant Graham allowed the defective hearing against Plaintiff with the goal of demonstrating to the OCR that Xavier was taking assault allegations seriously.

*Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 752 (S.D. Ohio 2014). However, in a footnote, this Court recognized that a "classic case of Title IX deliberate indifference relates to sexual harassment." *Id.* at n.2.

[3]In Count 3, Plaintiff has brought a separate claim under Title IX for "hostile environment/sexual harassment." The Supreme Court has held that, under certain circumstances, recipients of federal funds may be held liable under Title IX for student-on-student sexual harassment. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). However, Plaintiff's claim in Count 3 overlaps with the Title IX claim under the deliberate indifference theory. Therefore, these two claims will be analyzed together.

explains that his claim of deliberative indifference is based upon his allegations that Jane Doe should have been disciplined for engaging in sexual misconduct when she initiated physical contact with Plaintiff while he was incapacitated. However, Plaintiff has not alleged that he initiated his own complaint against Jane Doe based on this sexual misconduct. *See Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2017 WL 951464, at *13 (S.D. Ohio Mar. 10, 2017) (dismissing claim of deliberate indifference where plaintiff failed to allege that he complained to the university that he was being sexually harassed or that the university ignored his complaints of sexual harassment).

Even if the Court were to assume Miami had actual notice of the sexual misconduct through Plaintiff's disciplinary proceedings, Plaintiff has not adequately alleged that "the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school." *Patterson v. Hudson Area Sch.*, 551 F.3d 438, 444 (6th Cir. 2009) (quoting *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 258 (6th Cir. 2000)). Plaintiff has only identified one occasion where Jane Doe initiated physical contact with Plaintiff while he was incapacitated. Such allegations do not support a finding that the university was motivated by gender or that such allegations constituted gender or sexual harassment. *Doe v. Univ. of the S.*, 687 F. Supp. at 758 (citing *Ross v. Corp. of Mercer Univ.*, 506 F.Supp.2d 1325, 1346-350 (M.D.Ga.2007) ("Whether gender-oriented conduct rises to the level of actionable harassment depends on a constellation of surrounding circumstances, expectations and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved. Notwithstanding the foregoing principles, a single instance of one-on-one

13

peer harassment is likely not actionable under Title IX."); *see also Salau v. Denton*, 139 F. Supp. 3d 989, 1000 (W.D. Mo. 2015) ("Plaintiff's allegations fail to indicate that he was sexually harassed on the basis of his gender, as opposed to experiencing harassment because he was believed to have sexually assaulted another student."). Therefore, even if this Court were to recognize a claim under the deliberate indifference theory, Plaintiff has failed to state a claim under Title IX based on deliberate indifference.

## 2. **Erroneous outcome**

"In a typical erroneous outcome case, the plaintiff 'attack[s the] university disciplinary proceeding on grounds of gender bias" by arguing that the plaintiff "was innocent and wrongly found to have committed an offense.'" *Sahm*, 110 F. Supp. 3d at 777-78 (quoting *Yusuf*, 35 F.3d at 715). "[T]o state an erroneous-outcome claim, a plaintiff must plead: (1) 'facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding' and (2) a 'particularized . . . causal connection between the flawed outcome and gender bias.'" *Doe v. Cummins*, 662 Fed Appx. at 451 (quoting *Yusuf*, 35 F.3d at 715). "Causation sufficient to state a Title IX discrimination claim can be shown via 'statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.'" *Id*.

Plaintiff has alleged facts which cast doubt on the accuracy of the outcome of the Administrative Hearing. In her written statement about what occurred on the night of September 14, 2014, Jane Doe stated that she "kinda sobered up" when she arrived at Plaintiff's room. (Doc. 39, PAGEID #1974, ¶3(d)). Jane Doe explained that after she

joined Plaintiff in his bed, Plaintiff started kissing her, which was "okay and what I expected and fine."  (Doc. 39, PAGEID #1975, ¶3(e), (g)).  Jane Doe states that Plaintiff asked her if he could "finger" her, and she responded, "fine."  (Id.)  Jane Doe explains that when Plaintiff began to perform oral sex her, "I never said no.  I pushed him away. He rolled over and went to sleep."  (Doc. 39, PAGEID #1975, ¶3(h)).  However, Vaughn's October 10, 2014 letter explained that Plaintiff was found responsible based on the following:

> You stated both you and [Jane Doe] were friends and have spent time together in the past.  Both of you agreed to go to your residence room, where you engaged in consensual kissing and some consensual sexual contact.  However, at some point, [Jane Doe] indicated she did not want you to have oral sex and asked you to stop but the act continued as a result, the following sanctions have been imposed.

(Doc. 39, PAGEID #1987, ¶62).  This discrepancy between Jane Doe's written statement—"I never said no"—and the finding that Jane Doe asked Plaintiff to stop casts serious doubt on accuracy of the outcome of the Administrative Hearing. However, Plaintiff must also allege facts which demonstrate a causal connection between the erroneous outcome and gender bias.

Plaintiff argues that the Amended Complaint demonstrates there are patterns of decisionmaking at Miami that tend to show anti-male gender-bias.  Plaintiff points to the the affidavit of Attorney Timothy J. Meloy who practices law in Oxford, Ohio, where Miami is located.  (Doc. 41-5, Timothy J. Meloy Aff., PAGEID # 3132).  Meloy states:

> Since 2013, I am aware of approximately 12 male Miami students that have been subjected to disciplinary procedures for allegedly violating Miami's policies and/or procedures regarding sexual misconduct with regard to interactions with female Miami students.  I am not personally aware of any situation where Miami alleged a female Miami student violated Miami's policies and/or procedures regarding sexual misconduct with regard to her interactions with a male Miami student.

15

(Id., PAGEID # 3133).  The Sixth Circuit has rejected a similar sample size as being insufficient to draw any reasonable inferences of gender bias.  *Doe v. Cummins*, 662 F. App'x at 453 (finding nine sexual-assault investigations since 2011 insufficient to show a pattern of decisionmaking suggesting the influence of gender in the disciplinary process).

Plaintiff also alleges that "in virtually all cases of campus sexual misconduct by Miami students" reported between 2011 and 2014 "the accused student is male and the accusing student is female."  (Doc. 39, PAGEID # 2015, ¶149).  Plaintiff alleges that "during the Fall of 2013 and the Spring of 2014 . . . Defendants found every male student who was accused by a female of violating Miami's sexual misconduct policy to be 'responsible' for that alleged violation."  (Doc. 39, PAGEID # 2016, ¶151).  However, the Sixth Circuit has concluded that it would be unreasonable to infer that the gender disparity in these cases is the result of gender bias.  *Doe v. Cummins*, 662 Fed. Appx. at 453-54.  The court observed that there are more obvious reasons for the disparity, include that the school has only received complaints of male-on-female sexual assaults or males are less likely than females to report sexual assaults.  *Id.* at 453; *see also Marshall*, 2015WL 7254213, at *8 ("a pattern and practice of differential treatment is not enough to allege gender bias unless a plaintiff's complaint contains allegations that make it plausible that gender was the motivating factor behind that differential treatment.").

In contrast, this Court recently found that where there were cases similar to the plaintiff's case which alleged gender bias on the part of the university, these allegations demonstrated a pattern of anti-male gender bias.  *Doe v. Ohio State Univ.*, No. 2:16-

CV-171, 2017 WL 951464, at *17 (S.D. Ohio Mar. 10, 2017). This Court explained:

> Plaintiff has enumerated 20 examples of alleged anti-male gender bias in his responsive pleading including the *Waters v. Drake* decision, 105 F.Supp.3d 780, and another case before this Court brought by Attorney Josh Engel, *John Doe v. OSU*, Case No. 2:15–cv–2830 (the "Engel Case"), and OSU's training materials regarding consent and sexual assault which Plaintiff alleges illustrate gender bias against male students. (See full list in Doc. 40, Pl.'s Resp. at 16–19). Plaintiff contends that the timing of the *Waters* and Engel cases could have impacted the treatment of John Doe's case. The complaint in *Waters* was filed in September 2014, less than two months before OSU charged John Doe with sexual misconduct. Although *Waters* was ultimately dismissed on summary judgment, the case and the general allegations surrounding it—that OSU and the OSU marching band tolerated a sexualized environment on campus—were highly publicized. There is a strong possibility, as alleged by Plaintiff, that these lawsuits could have impacted John Doe's disciplinary process.

2017 WL 951464, *17. However, unlike the complaints filed against Ohio State University, Plaintiff's allegations do not identify specific cases filed against Miami which could have impacted Plaintiff's disciplinary process.[4] Moreover, the charges Plaintiff has identified as occurring during the Fall of 2013 and the Spring of 2014 did not result in the same type or level of publicity as the *Waters* litigation identified by this Court in *Doe v. Ohio State University*. Therefore, Plaintiff's allegations do not support a pattern of anti-make gender bias.

Next, Plaintiff alleges that in 2014, Miami issued a mandate that individuals evaluating sexual misconduct always "believe" the allegations of students making these assault allegations. (Doc. 39, PAGEID # 2015-16, ¶150). However, as this Court has

---

[4]Plaintiff does reference court filings from the 2014 lawsuit "filed by Miami student Matthew Sahm . . . [which] alleged Miami's gender biased application of its alcohol policy contributed to Sahm being wrongly found responsible for violating Miami's prohibitions against sexual misconduct." (Doc. 39, PAGEID #1995, ¶84). However, Plaintiff cites the *Sahm* case, which was dismissed on a motion to dismiss, as evidence of a pattern of gender-bias. The *Sahm* case would not have created pressure on Miami to discipline Plaintiff because the *Sahm* case itself was questioning whether there was bias in the disciplinary process.

observed, "[d]emonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm*, 110 F. Supp. 3d at 778-79 (citing *Bleiler v. College of Holy Cross*, No. 11–11541–DJC, 2013 WL 4714340, at *12 (D.Mass. Aug. 26, 2013), *appeal filed*, No. 13–2245 (1st Cir.); *see also King v. DePauw Univ.*, No. 2:14–cv–70–WTL–DKL, 2014 WL 4197507, at *10 (S.D.Ind. Aug. 22, 2014) (demonstrating a bias against students accused of sexual assault is not the equivalent of demonstrating a bias against males, even if all of the students accused of assault were male); *Haley v. Va. Commonwealth Univ.*, 948 F.Supp. 573, 579 (E.D.Va. 1996) (stating that "a bias against people accused of sexual harassment and in favor of victims ... indicate[s] nothing about gender discrimination").

Plaintiff also alleges in the Amended Complaint that Miami engaged in gender stereotyping in response to threats by the federal government that Miami could lose federal funding if Miami did not find male students responsible for sexually assaulting female students. (Doc. 39, PAGEID #1996-97; ¶¶ 86-88). Plaintiff alleges that Defendants "subjected John Doe to unlawful gender biased discipline in part to avoid bad press, an [U.S. Department of Educations' ("DOE") Office of Civil Rights ("OCR")] complaint, and/or litigation from female student(s) alleging Miami was not properly disciplining male students alleged to have engaged in sexual assaults." (Doc. 39, PAGEID # 2000, ¶100). However, the Sixth Circuit has found that absent additional facts, such allegations of federal-government influence are insufficient to create a plausible claim of gender bias under Title IX. *Doe v. Cummins*, 662 Fed. Appx. at 452.[5]

---

[5]The types of additional facts included: the university or any of its officials had faced public criticism for their handling of Title IX investigations; or the university was being

Finally, Plaintiff alleges a number of procedural irregularities which Plaintiff claims cast doubt about the accuracy of the outcome of the disciplinary hearing:

> Miami ignored the Association of Title IX Administrators' directive that adjudicators of sexual assault must look for: ". . . something more than an intent to have sex . . . [o]therwise, men are simply being punished for having sex, which is gender discrimination under Title IX, because their partners are having sex too and are not being subject to the code of conduct for doing so. . . . [causing the male student to] suffer an arbitrary and capricious application of the college's rules."  (Doc. 39, PAGEID # 1992, ¶76).

> Miami violated its own policies by denying Plaintiff access to Miami's investigative file and/or report regarding the charges against him.  (Doc. 39, PAGEID # 2001, ¶102).

> Miami denied Plaintiff access to audio recordings of his disciplinary hearing and Dean of Students Michael Curme's interrogation of him. (Doc. 39, PAGEID # 1979-80, ¶¶31-33 and PAGEID # 2022, ¶187).

> Plaintiff was allowed only forty-three hours to produce materials to present at the Hearing Panel, but Jane Doe was permitted to submit evidence against Plaintiff after this deadline expired; Miami withheld Jane Doe's evidence from Plaintiff until less than twenty-four hours before his hearing. (Doc. 39, PAGEID1984, ¶51; PAGEID # 2022 ¶186); and

> Miami allowed inadequately trained employees to adjudicate the charges against Plaintiff.  (Doc. 39, PAGEID # 2014, ¶146).

As this Court has noted: "although Title IX prohibits intentional gender discrimination, it does not support claims of disparate impact."  *Marshall*, 2015 WL 7254213, at *5.  Therefore, to the extent that Plaintiff alleges that Miami's procedures and enforcement of its obligations under Title IX have resulted in a disparate impact on men, these allegations fail to state a claim under Title IX.  *Id.* (citing *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (stating that "proof of intent . . . is the *sine qua non* to compensatory relief for any type of Title IX violation.").

---

investigated by the federal government for potential Title IX violations.  These facts are not alleged in the Amended Complaint.

To the extent that Plaintiff has identified alleged procedural deficiencies, without alleging additional facts linking the procedural defects to gender bias, these allegations do not create a plausible inference of gender discrimination under Title IX. *Doe v. Cummins*, 662 F. App'x at 452. "Allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Doe v. Cummins*, 662 F. App'x at 452 (quoting *Yusuf*, 35 F.3d at 715).

For example, in *Doe v. Case W. Reserve Univ.*, No. 1:14CV2044, 2015 WL 5522001 (N.D. Ohio Sept. 16, 2015), the court found that the plaintiff pleaded facts sufficient to cast doubts on accuracy of a disciplinary proceeding outcome by alleging that the university pressured a student to provide evidence against the plaintiff during an appeal, did not allow the plaintiff to review that evidence, denied the plaintiff the opportunity to cross examine his accuser during the disciplinary hearing, and treated the plaintiff in a hostile manner during that hearing. *Id.* at *5. However, the court explained: "While these pleadings may call to question the outcome of the proceedings, they are not factual allegations supporting the conclusion that the procedural flaws and hostility towards Plaintiff were motivated by sexual bias." *Id.* at *5. The court concluded that the complaint failed to state a claim for which relief can be granted under Title IX's "erroneous outcome" standard. *Id.* at *6. *Cf. Doe v. Amherst Coll.*, No. CV 15-30097-MGM, 2017 WL 776410, at *17 (D. Mass. Feb. 28, 2017) (allegations support claim of erroneous outcome where student who filed complaint accusing plaintiff of sexual misconduct was involved in student-led movement to compel the college to change the way it handled sexual assault allegations; the college was aware of her involvement in

the movement; and the college was actively trying to appease the student-led movement); *Doe v. Lynn Univ., Inc.*, No. 9:16-CV-80850, 2017 WL 237631, at *4 (S.D. Fla. Jan. 19, 2017) (allegations support claim of erroneous outcome where news media report criticized the university for its handling of sexual assault complaints made by female students against males; media report generated pressure from parents of female students and the public; and the university was cognizant of that criticism).

Because Plaintiff has failed to show how the alleged procedural deficiencies are connected to gender bias, Plaintiff fails to state a claim under Title IX based on erroneous outcome theory.

### D.  Section 1983

Plaintiff has brought claims under 42 U.S.C. § 1983 based on violations of procedural and substantive due process under the Fourteenth Amendment and a violation of equal protection under the Fourteenth Amendment.  These claims are brought against the Individual Defendants in both their official capacity for injunctive relief and their personal capacity for money damages.

"To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States."  *Green v. Throckmorton*, 681 F.3d 853, 859-860 (6th Cir. 2012) (quoting *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 358–59 (6th Cir. 2001).

### 1.  Substantive due process

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  In

the Amended Complaint, Plaintiff asserts two claims based on violations of his substantive due process. Plaintiff's first claim is based upon his "property interest in his education (and) right to pursue an education and future education and employment opportunities and occupational liberty" (Doc. 39, PAGEID #2022, ¶183) and his "property right to a transcript unmarred by Defendants' unlawful investigation and/or discipline of John Doe." (Doc. 39, PAGEID #2024, ¶197). Plaintiff's second claim is that the Individual Defendants' abuse of executive power was so egregious that it "shocks the conscience." (Doc. 39, PAGEID #2023, ¶190). However, in responding to Defendants' Motion to Dismiss, Plaintiff has confined his claim to one based on a property right in continued enrollment in college.

While the Supreme Court has refrained from determining whether continued enrollment in school free from arbitrary state action is protected by substantive due process, the Sixth Circuit has held that a university student's property interest in continuing his or her education is not protected by substantive due process. *Marshall*, 2015 WL 7254213, at *9 (citing *Bell v. Ohio State Univ*., 351 F.3d 240, 251 (6th Cir. 2003) ("[W]e can see no basis for finding that a medical student's interest in continuing her medical school education is protected by substantive due process.")). Therefore, a university's decision to suspend a student will be upheld if it is rationally related to a proper public purpose. *Id.* at *10 (citing V*alot v. S.E. Local Sch. Dist. Bd. of Educ*., 107 F.3d 1220, 1228 (6th Cir. 1997); *H.M. v. Bd. of Educ. of King's Local Sch. Dist*., No. 1:14-cv-64, 2015 WL 4624629 at *3 (S.D. Ohio Aug. 3, 2015)). This Court has held that given that universities have an obligation to provide safe campuses, a "desire to show the Department of Education that [the University] is willing to 'crackdown' on

perpetrators of sexual assault and sexual misconduct on university campuses" is not an allegedly improper purpose." *Id.* Therefore, Plaintiff has failed to state a claim for a violation of his substantive due process.

## 2. **Procedural due process**

"To establish a procedural due process claim, a plaintiff must show that (1) it had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). "Although property rights are principally created by state law, 'whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law.'" *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009) (quoting *Whaley v. County of Tuscola*, 58 F.3d 1111, 1114 (6th Cir. 1995)).

The Sixth Circuit has recently clarified that suspension resulting from a higher education disciplinary decision "clearly implicates a property interest." *Doe v. Cummins*, 662 Fed. Appx. 445 (citing *Jaksa v. Regents of Univ. of Mich.*, 597 F.Supp. 1245, 1247-48 (E.D. Mich. 1984)). The Sixth Circuit also explained that even absent a suspension, an adverse disciplinary decision "impugns [a student's] reputation and integrity, thus implicating a protected liberty interest." *Id.* (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (holding that where "a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the minimal requirements of due process must be satisfied)).

In *Doe v. Cummins*, the Sixth Circuit also provided the proper analytic framework to determine "what process is due" once it is determined that due process applies: Under *Mathews v. Eldridge*, "the level of process the Fourteenth Amendment requires is determined by balancing three factors: (1) the nature of the private interest affected by the deprivation; (2) the risk of an erroneous deprivation in the current procedures used, and the probable value, if any, of additional or alternative procedures; and (3) the governmental interest involved, including the burden that additional procedures would entail." *Id.* at 446 (citing 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976)). "Although the inquiry should be flexible, due process requires, at a minimum, 'the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews*, 424 U.S. at 333, 96 S.Ct. 893). The court explained: "In the school-disciplinary context, an accused student must at least receive the following pre-expulsion: (1) notice of the charges; (2) an explanation of the evidence against him; and (3) an opportunity to present his side of the story before an unbiased decisionmaker." *Id.* (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 565 (6th Cir. 2011)). However, "disciplinary hearings against students . . . are not criminal trials, and therefore need not take on many of those formalities." *Id.* (quoting *Flaim*, 418 F.3d at 635). A full-scale adversarial proceeding is not required. *Id.* Instead, the focus should be on "whether the student had an opportunity to 'respond, explain, and defend,' and not on whether the hearing mirrored a criminal trial." *Id.* (citing *Flaim*, 418 F.3d at 635).

In *Doe v. Cummins*, the Sixth Circuit found that under the first *Mathews* factor, the private interest at stake was compelling. *Id.* The court explained that a finding of responsibility for a serious sexual offense will have a substantial lasting impact on a

student's personal life, educational and employment opportunities, and reputation in the community.  *Id.*  As to the sufficiency of the procedures, the court found that notice was sufficiently formal and timely to satisfy due process requirements and provide a student with a meaningful opportunity to prepare a response.  *Id.*  The court noted that more than a month before the hearing, written notice of the charges was provided and then a follow-up meeting was held to discuss the allegations with the assistant dean of students.  *Id.* at 447.

Plaintiff claims that in contrast, he only had forty-three hours to respond to the allegations against him.  (Doc. 39, PAGEID #1984-985, ¶50-53).  Plaintiff also claims Defendants did not provide John Doe "the specifics of Jane Doe's allegations . . . until less than 24 hours before" his hearing. (Doc. 39, PAGEID # 2022, ¶186).  However, the Court notes that the "Notice of Hearing," which was provided to Plaintiff on October 1, 2014, was not the first notice Plaintiff received of the charges against him.  On September 16, 2014, Dean Curme notified Plaintiff that a summary suspension hearing would be held the next day.  (Doc. 39, PAGEID # 1980, ¶30).  Dean Curme explained that the summary suspension hearing stemmed from a "report alleging that you sexually assaulted a female student on Sunday September 14, 2014."  (Id.)  Following the summary suspension hearing, on September 23, 2014, Plaintiff received a "Notice of Alleged Violation" informing him that a "Procedural Review" would take place the next day.  (Doc. 39, PAGEID # 1981, ¶39).  The notice explained that the purpose of the Procedural Review was to "review the charges, provide you with an explanation of the disciplinary process, discuss your options with regard to these charges, and advise you of the potential sanction(s) for the alleged violation(s)."  (Doc. 39-2, PAGEID # 2052).

The Procedural Review took place on September 24, 2014.  (Doc. 39, PAGEID # 1982, ¶42).  Then on October 1, 2014, Plaintiff received the Notice of Hearing that his hearing would take place on October 7th.  (Doc. 39-3, PAGEID # 2193).  The Notice of Hearing informed him that he could submit a list of witnesses he intended to present, along with any supporting documents or written statements he wanted the Hearing Panel to consider by October 3, 2014.  (Doc. 39-3, PAGEID # 2193).  This timeline of events is similar to that in *Doe v. Cummins*, which the Sixth Circuit found to be "sufficiently formal and timely to satisfy due-process requirements and provide appellants with a meaningful opportunity to provide a defense."  662 Fed. Appx. 447.  Therefore, the Court concludes that the notice Miami provided to Plaintiff satisfies procedural due process.

Next, Plaintiff claims that Miami failed to follow its own procedural guidelines, which led him to be subjected to a fundamentally unfair disciplinary process.  However, "an allegation that the disciplinary board violated its own policies and procedures does not state a claim for a due process violation."  *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 603 (S.D. Ohio 2016) (citing *Heyne v. Metropolitan Nashville Pub. Sch.*, 655 F.3d 556, 569 (6th Cir. 2011); *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir. 1987); *Levitt v. University of Tex. at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985) ("There is not a violation of due process every time a university or other government entity violates its own rules.")).  As the Sixth Circuit recently explained, it is "the Constitution—and the case law interpreting it—[which] mandates what procedures are constitutionally required following the deprivation of a property or liberty interest, and not internal school rules or policies."  *Doe v. Cummins*, 662 F. App'x at 445, n.2.

Plaintiff also claims that his trier-of-fact was not impartial. "To insure 'fundamentally fair procedures,' school officials responsible for deciding whether to exclude a student from school must be impartial." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 567 (6th Cir. 2011). However, school disciplinary boards "are entitled to a presumption of honesty and impartiality absent a showing of actual bias." *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 601-602 (citing *Atria v. Vanderbilt Univ.*, 142 Fed.Appx. 246, 256 (6th Cir. 2005)); *see also Doe v. Baum*, No. 16-13174, 2017 WL 57241, at *9 (E.D. Mich. Jan. 5, 2017) (citing *Ikpeazu v. Univ. of Nebraska*, 775 F.2d 250, 254 (8th Cir. 1985) ("With respect to the claim of bias, we observe that the committee members are entitled to a presumption of honesty and integrity unless actual bias, such as personal animosity, illegal prejudice, or a personal or financial stake in the outcome can be proven.")). "Any alleged prejudice on the part of the [decisionmaker] must be evident from the record and cannot be based in speculation or inference." *Doe v. Cummins*, 662 F. App'x at 450 (quoting *Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987)).

In the Amended Complaint, Plaintiff alleges that Grudy-Yoder holds gender-biased views against male students based on her academic research, which focuses on feminist criminological theory and the implementation of gender-specific policy and procedures within the American system of corrections. (Doc. 39, PAGEID #1982, ¶54). Plaintiff alleges that Grudy-Yoder authored a book entitled "Feminist Theory, Crime, and Social Justice" which has been described as offering "an insightful look at the primarily masculine-driven perspective on crime and justice through the lens of feminist theory." (Id.) Plaintiff explains that Grundy-Yoder's research has been described as advancing

27

the existence of "gender-specific differences in crimes committed by men and women."
(Id.)   Similarly, Plaintiff alleges that his appeal of the Hearing Panel's decision was
rejected because Miami's Appeals Board Chair Rose Marie Ward's academic research
focuses on college student alcohol consumption and sexual assault from the
perspective of protecting females from males.   (Doc. 39, PAGEID #1991, ¶74).

This Court has explained that similar allegations do not establish actual bias.
*Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 601-602 (citing *Gomes v. University of
Maine Sys.*, 365 F.Supp.2d 6, 31–32 (D.Me. 2005) (explaining the fact that the hearing
board chair participated in sexual assault victim advocacy programs did not
demonstrate that she was biased against the plaintiff in his sexual misconduct
disciplinary hearing)).

Next, Plaintiff alleges there was actual bias because Vaughn served as
investigator, prosecutor, and judge of the charges against Plaintiff.  (Doc. 39, PAGEID
#1982, ¶58).  Plaintiff states that Vaughn dominated the Administrative Hearing with
questions and comments designed to deflate Plaintiff's credibility while inflating Jane
Doe's credibility.   (Doc. 39, PAGEID #1982, ¶58).   Plaintiff alleges that Vaughn's
conduct during the Administrative Hearing exhibited gender bias against males. (Doc.
39, PAGEID #1982, ¶60).   Specifically, Plaintiff alleges that Vaughn asked questions
and made comments downplaying facts proving Jane Doe initiated physical contact with
Plaintiff when she know or should have known he was incapacitated by alcohol; and/or
coaxed Jane Doe to provide testimony that reinforced gender biased stereotypes of
male students such as Plaintiff wanting to initiate unwanted physical contact with
females.  (Id.)

Courts have held that it is not necessarily a violation of due process for a school administrator to play more than one role in the disciplinary process. *Heyne*, 655 F.3d at 567; *Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1125 (8th Cir. 2005) (citing *Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985) ("A school administrator involved in the initiation and investigation of charges is not thereby disqualified from conducting a hearing on the charges, although the facts of an occasional case may demonstrate that a school official's involvement in an incident created a bias 'such as to preclude affording the student an impartial hearing.'") (quoting *Sullivan v. Houston Indep. School Dist.*, 475 F.2d 1071, 1077 (5th Cir. 1973)); *cf. C.B. v. Driscoll*, 82 F.3d 383, 387 n.3 (11th Cir. 1996) ("In the school context, it is both impossible and undesirable for administrators involved in incidents of misbehavior always to be precluded from acting as decisionmakers.")).  As one court has explained: "In a school disciplinary context, the level of impartiality required for the decision maker does not reach the absolute neutrality required in the criminal justice system." *Jennings*, 397 F.3d at 1124-25 (quoting *Riggan v. Midland Independent School District*, 86 F.Supp.2d 647 (W.D.Tex.2000)); *but see Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 620, n.20 (E.D. Va. 2016) ("it must be noted that the level of impartiality required in the post-secondary context may differ from what due process requires in elementary and secondary schools. After all, most elementary and secondary schools have limited staff, so requiring absolute neutrality would impose significant administrative burdens on the school.").

In *Heyne v. Metro. Nashville Pub. Sch.*, the Sixth Circuit found that the plaintiff had alleged specific facts which indicated the presence of pre-existing bias that could

give rise to a valid claim for a violation of procedural due process.  655 F.3d at 568. The incident which formed the basis of the discipline involved an African-American student threatening the plaintiff, a Caucasian student.  *Id.* at 559.  Before the incident, the principal allegedly instructed the staff at the school to be more lenient in enforcing the school's code of conduct against African-American students. *Id.* at 568.  The principal also allegedly admitted that he decided to suspend the plaintiff to "cover" himself and the school from a lawsuit threatened by the parents of the African-American student.  *Id.*  In addition, the principal was aware that the school district maintained statistics on student discipline which included the race of students subject to discipline. *Id.*  The Sixth Circuit explained that "[t]aken as a whole, the Amended Complaint's factual allegations, which we must accept as true, plausibly suggest that [the principal's] ability to impartially determine the appropriate discipline in relation to the September 5, 2008 incident had been manifestly compromised." *Id.*

Plaintiff has not alleged similar facts here.  Instead, Plaintiff's focus is on Vaughn's conduct during the Administrative Hearing.  Plaintiff alleges that the manner in which Vaughn asked questions and the questions themselves show that Vaughan was biased.  Plaintiff alleges that during the Administrative Hearing, Vaughn accused Plaintiff of regularly engaging in the sexual assault of women via her accusation that "I'll bet you do this all the time;'" and Vaughn's body language suggested that she believed Plaintiff was lying when he responded that he had not engaged in this type of activity previously and that he had only had one serious girlfriend.  (Doc. 39, PAGEID # 1988, ¶66).

The Court concludes that the allegations regarding this exchange does not raise questions about the fairness of the hearing.  *Cf. Furey v. Temple Univ.*, 730 F. Supp. 2d 380, 396 (E.D. Pa. 2010) (denying summary judgment to defendants where disciplinary hearing panel members aggressively cross-examined the plaintiff, announced that hospital records showed that the plaintiff had tested positive for alcohol when they did not, told both the plaintiff and his mother to be quiet, and told the plaintiff's mother to "shut up").  Therefore, Plaintiff has failed to state a claim for a violation of his procedural due process.

### 3.  Equal protection

The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  In order to establish an equal protection violation, a plaintiff must show that defendants "have burdened a fundamental right, which he was exercising, targeted a suspect class, of which he is a part, or treated him any differently than others similarly situated without any rational basis."  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005).  Therefore, Plaintiff must do more than merely allege that he was treated unfairly as an individual by Defendants' actions.  *Id.* (citing *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999)).

Plaintiff states, without much elaboration, that his equal protection claim is based upon the same gender discrimination which he alleges improperly caused Miami to find him responsible for engaging in sexual misconduct with Jane Doe.  The Court notes that Plaintiff alleges that he was treated differently than his female counterpart in two instances: (1) Jane Doe was given "limited amnesty" for underage drinking under

Section 2.1.C.2 of Miami University's Student Handbook; and (2) Plaintiff was required to submit materials by the October 3, 2014 deadline in the Notice of Hearing, but Jane Doe was permitted to submit her written statement past the deadline, on October 6, 2014.

When a facially neutral rule, such as the limited amnesty policy at issue in this case, is challenged on equal protection grounds, the plaintiff must show that the rule was promulgated or reaffirmed because of, not merely in spite of, its adverse impact on persons in the plaintiff's class. *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); *see also Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-65 (1977) ("[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.") (citing *Washington v. Davis*, 426 U.S. 229 (1976)).  Plaintiff has failed to allege that the "limited amnesty" policy creates an impermissible class or is based on discriminatory intent.  Therefore, Plaintiff has failed to state a claim for a violation of equal protection based on the grant of limited amnesty policy to Jane Doe.

Similarly, Plaintiff has not alleged that the extension granted to Jane Doe to submit materials for the Administrative Hearing was based on discriminatory intent. Moreover, there is no allegation that Plaintiff asked for and was denied an extension to submit his own materials.  Therefore, Plaintiff has failed to state a claim for a violation of his right to equal protection.

### E. **Qualified immunity**

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a government official is entitled to qualified immunity, courts are to consider a two-part test: (1) whether "a constitutional right would have been violated on the facts alleged" and, if so, (2) whether the right was "clearly established." *Occupy Nashville v. Haslam*, 769 F.3d 434, 442 (6th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). If either prong is not satisfied, then qualified immunity shields the government officer from civil damages. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

Here, the Court has found that Plaintiff has failed to state a claim that his constitutional rights were violated. Therefore, it is unnecessary to address whether the right was clearly established.[6] As such, the Court concludes that the Individual Defendants are entitled to qualified immunity from Plaintiff's § 1983 claims against them in their individual capacities for civil damages.

---

[6]However, this Court previously found that a student does not have clearly established substantive or procedural due process rights related to university disciplinary proceedings. This Court noted that "[a]lthough some courts have concluded that university students have such rights, the existence and contours of those rights appear to remain an issue of judicial debate." *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 7254213, at *13 (S.D. Ohio Nov. 17, 2015).

III.  <u>**CONCLUSION**</u>

Based on the foregoing, it is **ORDERED** that:

1. Plaintiff's Motion *Instanter* to Supplement Docket 43 with Supplemental Authorities issued after the Filing of Docket 43 (Doc. 50) is **GRANTED**;

2. Defendants' Motion to Dismiss (Doc. 42) is **GRANTED**; and

3. This matter is **CLOSED and TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

<i>/s/ Michael R. Barrett</i>

JUDGE MICHAEL R. BARRETT